STATE OF NORTH CAROLINA v. MARK DANIEL TERRY

No. COA10-9

(Filed 5 October 2010)

**1. Evidence— motion to suppress statements—sheriff's department—no reasonable expectation of privacy—marital privilege inapplicable**

The trial court did not err in a drugs case by denying defendant's motion to suppress statements made by defendant and his wife at the sheriff's department. Defendant did not have a reasonable expectation of privacy when there were warning signs that the premises were under audio and visual surveillance, and thus, the marital privilege was inapplicable.

**2. Search and Seizure— motion to suppress drugs—"knock and announce" entry—exigent circumstances**

The trial court did not err in a drugs case by denying defendant's motion to suppress evidence seized at his home as a result of a search warrant based on an alleged improper "knock and announce" before entering the premises. When the purpose of the search warrant was to search for illegal drugs, the time between law enforcement's "knock and announce" and their entry into the residence may be reduced.

**3. Drugs— motion to dismiss—sufficiency of evidence—constructive possession of drugs**

The trial court did not err by denying defendant's motions to dismiss the charges of felony possession of marijuana with intent to manufacture, sell, or deliver; felony possession of a Schedule II controlled substance; felony keeping or maintaining a dwelling for keeping a controlled substance; and misdemeanor possession of drug paraphernalia based on alleged insufficient evidence that defendant possessed the controlled substances seized at his residence. There were sufficient incriminating circumstances of constructive possession including that defendant lived at and owned a possessory interest in the residence, he shared the bedroom where drugs were found, and he made statements concerning the drugs.

STATE v. TERRY

[207 N.C. App. 311 (2010)]

**4. Appeal and Error— preservation of issues—failure to object at trial—failure to argue plain error**

Although defendant contended the trial court erred by considering an SBI agent's visual identification of a white pill found in defendant's master bedroom as Methadose to be sufficient evidence to charge defendant with possession of a schedule II controlled substance, this argument was dismissed based on defendant's failure to object to the testimony and failure to argue plain error.

**5. Appeal and Error— preservation of issues—failure to argue**

The remaining assignment of error that defendant failed to argue was deemed abandoned under N.C. R. App. P. 28(b)(6).

Appeal by defendant from judgments entered 4 June 2009 by Judge Jack W. Jenkins in Onslow County Superior Court. Heard in the Court of Appeals 18 August 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel S. Johnson, for the State.*

*James W. Carter, for defendant-appellant.*

STEELMAN, Judge.

Where there were warning signs that the premises were under audio and visual surveillance, and there were cameras and recording devices throughout the Sheriff's Department and in the conference room where the conversation between defendant and his wife took place, defendant did not have a reasonable expectation of privacy and the marital privilege was not applicable. When the purpose of a search warrant is to search for illegal drugs, the time between law enforcement's "knock and announce" and their entry into the residence may be reduced. Where defendant lived at and owned a possessory interest in the residence, shared the bedroom where drugs were found, and defendant made statements concerning the drugs, there were sufficient incriminating circumstances to support submission of the possession charges to the jury under the theory of constructive possession.

## I. Factual and Procedural History

On 21 June 2007, Sergeant Robert Ides ("Ides") of the Onslow County Sheriff's Department obtained a search warrant for Mark Daniel Terry's ("defendant's") residence based upon information

STATE v. TERRY

[207 N.C. App. 311 (2010)]

received from a confidential informant who had seen marijuana in the residence. In addition, there had been anonymous calls from citizens complaining that drugs were being sold from the residence. Ides and his team executed the search warrant on 22 June 2007. The search produced marijuana and other drug paraphernalia. Defendant and his wife were arrested, and taken to the Onslow County Sheriff's Department, where they were placed in an interview room next to the narcotics office.

Defendant was subsequently indicted for (1) felony possession of marijuana with intent to manufacture, sell or deliver; (2) felony manufacture of marijuana; (3) misdemeanor child abuse based upon exposure of a child to illegal drugs; (4) felony possession of a Schedule II controlled substance (Methadose); (5) felony maintaining a dwelling for keeping and selling controlled substances; (6) misdemeanor possession of drug paraphernalia; and (7) conspiracy to commit the felonies enumerated above.

Prior to trial, defendant made a motion to suppress the contraband that was seized during the search of defendant's home, asserting that police violated the "knock and announce" requirement when the search warrant was executed. Defendant's motion was denied. Defendant also filed two motions to suppress evidence of statements made by defendant and his wife at the Onslow County Sheriff's Department based upon marital privilege. These motions were heard and denied prior to trial.

At the close of the State's evidence, the trial court dismissed the felony manufacture of marijuana and felony conspiracy charges. The State voluntarily dismissed the misdemeanor child abuse charge. The jury found defendant guilty of felony possession of marijuana with intent to manufacture, sell or deliver; felony possession of a Schedule II controlled substance; felony keeping or maintaining a dwelling for keeping a controlled substance; and misdemeanor possession of drug paraphernalia. Defendant was sentenced to two consecutive six to eight month sentences, which were suspended. Defendant was placed on supervised probation for 36 months under regular and special conditions of probation.

Defendant appeals.

## II. Motion to Suppress Statements

[1] In his first argument, defendant contends that the trial court erred in denying his motion to suppress statements made by defendant and his

wife at the Onslow County Sheriff's Department, because the statements were protected by the privilege for communications between a husband and wife. We disagree.

### A. Standard of Review

> Generally, an appellate court's review of a trial court's order on a motion to suppress is strictly limited to a determination of whether its findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion. Where, however, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. . . . Accordingly, we review the trial court's order to determine only whether the findings of fact support the legal conclusion[s]. . . .

*State v. White*, 184 N.C. App. 519, 523, 646 S.E.2d 609, 611-12 (2007) (quotation omitted), *disc. review denied*, 361 N.C. 702, 653 S.E.2d 160 (2007).

Defendant's assignment of error challenges only the trial court's denial of his motion to suppress, and does not challenge any of the trial court's findings of fact. The trial court's findings are binding on appeal, and our review is limited to whether these findings support the trial court's conclusions of law. *State v. Icard*, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009).

### B. Marital Privilege

The North Carolina General Statutes provide that "[n]o husband or wife shall be compellable in any event to disclose any *confidential communication* made by one to the other during their marriage." N.C. Gen. Stat. § 8-57(c) (2009) (emphasis added). The privilege codified in N.C. Gen. Stat. § 8-57(c) is an extension of the common-law marital communication privilege that "allows marriage partners to speak freely to each other in confidence without fear of being thereafter confronted with the confession in litigation." *State v. Freeman*, 302 N.C. 591, 596, 276 S.E.2d 450, 453-54 (1981).

Whether defendant's communications with his wife while at the Onslow County Sheriff's Department were protected by this privilege hinges on whether those statements constitute confidential communications. To qualify as a confidential marital communication under N.C. Gen. Stat. § 8-57(c), the communication must be one that was "induced by the marital relationship and prompted by the affection,

confidence, and loyalty engendered by such relationship." *Id.* at 598, 276 S.E.2d at 454 (citations omitted). There must also be "[1] a reasonable expectation of privacy on the part of the holder and [2] the intent that the communication be kept secret." *State v. Rollins*, 363 N.C. 232, 238, 675 S.E.2d 334, 338 (2009). In determining whether a reasonable expectation of privacy existed, "[t]he circumstances in which the communication takes place, including the physical location and presence of other individuals" are taken into account. *Id.* at 237, 675 S.E.2d at 337 (citation omitted).

The trial court made the following findings of fact:

> That the defendant and defendant's wife were taken to the Onslow County Sheriff's Department;

> That they did enter the Sheriff's Department and there are warning signs in the Sheriff's Department to the effect of under audio and visual surveillance;

> There are cameras and recording devices throughout the facility in the Onslow County Sheriff's Department;

> That the defendant and his wife were taken to an interview room, a room specifically set up for interviews for witnesses and suspects. The defendant and his wife were not handcuffed in the room, were free to speak on their own without anyone else in the room. The room had no windows. There was a camera that not only recorded visually but also sound and film of what was going on in the room;

> That a conversation did take place between the husband and the wife in the room. Conversation can be heard on the recording that was made;

> . . .

> That the individuals spoke at length in the room. There are statements made that could be deemed to be against the interest of the defendant and basically the husband and wife conversation appeared to be a conversation between two individuals charged with a crime or suspected of a crime and was not a conversation that would appear to be one between a husband and wife, per se. It was not a conversation that appeared to be a marital conversation or a conversation that would be induced by the marital relationship or one prompted by affection, confidence or loyalty engendered by said relationship but instead

a conversation between two individuals that were implicated in some crime, and DVD speaks for itself along those lines.

The Court finds that was at that [sic] nature of the conversation and not a conversation somehow part of the marital relationship or induced by the factors just mentioned.

Based upon the Supreme Court decision in *State v. Rollins*, 363 N.C. 232, 675 S.E.2d 334, the trial court held that defendant did not have a reasonable expectation of privacy as to these conversations, and denied defendant's motions to suppress. The State subsequently introduced portions of the video and audio. The substance of the conversation between defendant and his wife was summarized in the Sheriff's Department investigation report, which was quoted in defendant's motion to suppress:

While in the (interrogation)/interview room at the sheriff's office, suspects Mark Terry and Ester Terry are observed talking to one another about the amount of Marijuana found and about a second house and wondering how we found out about it. Both showed obvious knowledge of the drugs found in the residence. They were also trying to figure out who the informant was. Ester Terry also was making comments about her not giving us all of her information.

Ester Terry also told defendant, "I'll tell them it was mine." The trial court went on to hold:

[W]e had a defendant and wife who were in an interview room in a facility that is a law enforcement facility in a room designed to interview defendants or suspects or witnesses in crimes in a facility that has clearly marked that conversations and so forth are under 24 hour surveillance and conversation that clearly appears to be between two individuals who are implicated in wrongdoing as opposed to a husband and wife who are somehow expressing loyalty, affection and confidence with each other.

In *State v. Rollins*, our Supreme Court held that conversations between a husband and wife in the public visiting area of a correctional facility did "not qualify as confidential communications under section 8-57(c)." 363 N.C. at 235, 675 S.E.2d at 336. The Supreme Court further held that "incarcerated persons have a diminished expectation of privacy." *Id.* at 239, 675 S.E.2d at 338. The New York case of *Lanza v. New York* was cited with approval for the proposition that "to say that a public jail is the equivalent of a man's 'house'

or that it is a place where he can claim constitutional immunity from search or seizure . . . is at best a novel argument. . . . In prison, official surveillance has traditionally been the order of the day." *Rollins,* 363 N.C. at 239, 675 S.E.2d at 339 (citing *Lanza v. New York,* 370 U.S. 139, 143, 8 L. Ed. 2d 384, 388-89 (1962)).

> The rationale that the spouses may ordinarily take effective measures to communicate confidentially tends to break down where one or both are incarcerated. However, communications in the jailhouse are frequently held not privileged, often on the theory that no confidentiality was or could have been expected.

*Rollins,* 363 N.C. at 240, 675 S.E.2d at 339 (citing Kenneth S. Broun et al., *McCormick on Evidence* § 82 (6th ed. 2006)). In the instant case, both defendant and his wife had been placed under arrest and were in an interview room. There were warning signs in the Sheriff's Department that the premises were under audio and visual surveillance. There were cameras and recording devices throughout the Sheriff's Department, and in the conference room. Given these undisputed findings of fact, they support the trial court's conclusion that defendant and his wife did not have a reasonable expectation of privacy in the interview room.

This argument is without merit.

### III. Motion to Suppress Evidence from Defendant's Residence

**[2]** In his second argument, defendant contends that the trial court erred in denying defendant's motion to suppress evidence seized at his home as a result of the search warrant because the police failed to properly "knock and announce" their presence and intent before entering the premises. We disagree.

### A. Standard of Review

As discussed in the preceding section, the trial court's findings of fact are binding if supported by competent evidence. *Icard,* 363 N.C. at 308, 677 S.E.2d at 826. If supported by competent evidence, those findings are conclusive even where conflicting evidence exists. *State v. Simpson,* 314 N.C. 359, 368, 334 S.E.2d 53, 59 (1985). We review the trial court's conclusions of law *de novo. Icard,* 363 N.C. at 308, 677 S.E.2d at 826.

### B. Knock and Announce

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure . . . against unreasonable

searches and seizures" from either state or federal officers. U.S. Const. amend. IV; *Wilson v. Arkansas*, 514 U.S. 927, 931, 131 L. Ed. 2d 976, 980 (1995). Such protection is also part of the North Carolina Constitution. *See* N.C. Const. art. I, § 20. Part of the reasonableness requirement of the Fourth Amendment is that an officer, prior to entering a residence to serve a warrant, must "knock and announce" his or her presence. *Wilson*, 514 U.S. at 929, 131 L. Ed. at 979. In addition to federal requirements[1], the "knock and announce" requirement is codified in North Carolina's General Statutes:

> The officer executing a search warrant must, before entering the premises, give appropriate notice of his identity and purpose to the person to be searched, or the person in apparent control of the premises to be searched. If it is unclear whether anyone is present at the premises to be searched, he must give the notice in a manner likely to be heard by anyone who is present.

N.C. Gen. Stat. § 15A-249 (2009). "This Court has repeatedly stated that 'what is a reasonable time between notice and entry depends on the particular circumstances in each case.' " *State v. Reid*, 151 N.C. App. 420, 426, 566 S.E.2d 186, 190 (2002) (quotation omitted). Where exigent circumstances exist when a search warrant is executed, a brief delay between notice and forced entry is more likely to be considered reasonable. *State v. Knight*, 340 N.C. 531, 543, 459 S.E.2d 481, 489 (1995). Exigent circumstances may be found to exist where police are executing a search warrant for narcotics which may be easily disposed of prior to being discovered. *See State v. Sumpter*, 150 N.C. App. 431, 434, 563 S.E.2d 60, 62 (2002).

In the instant case, the trial court found as fact that (1) "the officers did knock on the door, did shout, did announce Sheriff's Department and search warrant," and (2) that the door was open, not locked or blocked in any way. Each of these findings of fact were supported by competent evidence presented by the State and at the *voir dire* hearing. Ides testified that the first thing they did, after arriving at the residence, was to check to see if the door was locked. On finding it unlocked, Ides testified that they announced "Sheriff's Department, search warrant," the door was opened, and the police entered the dwelling. Captain John Lewis also testified that he heard Ides knock and announce "Sheriff's Department."

Based upon these findings of fact, the trial court concluded that the knock and announce procedure was executed in a fashion that

---

1. The "knock and announce" requirement is also codified at 18 U.S.C. § 3109.

STATE v. TERRY

[207 N.C. App. 311 (2010)]

was compliant with § 15A-249 of the General Statutes, and that the rights of the defendant to be free from unreasonable search and seizure were not violated. Defendant contends that the trial court erred in this conclusion in part because there was not a long period of time between the "knock and announcement" and when the officers entered the house. However, the search warrant was issued based upon information that marijuana was being sold from the house. Since this was a drug that could be easily and quickly disposed of, we hold that the brief delay between notice and entry was reasonable in this case. *See Knight,* 340 N.C. at 543, 459 S.E.2d at 489. The trial court correctly determined that the knock and announce procedure was properly executed, and that defendant's constitutional right against unreasonable searches and seizures was not violated.

This argument is overruled.

## IV. Motions to Dismiss for Insufficient Evidence of Possession

[3] In his third argument, defendant contends that the trial court erred in denying his motions to dismiss for insufficient evidence that defendant possessed the controlled substances seized at his residence. We disagree.

### A. Standard of Review

The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Webb,* 192 N.C. App. 719, 721, 666 S.E.2d 212, 214 (2008) (quoting *State v. Wood,* 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005)). To properly deny a motion to dismiss for insufficient evidence, the trial court must only determine that there is some evidence tending to prove guilt or which reasonably leads to the conclusion that defendant had constructive possession as a fairly logical and legitimate deduction. *State v. Laws,* 345 N.C. 585, 592-93, 481 S.E.2d 641, 644-45 (1997).

Defendant elected to present evidence, and has consequently waived his right to object to the trial court's decision not to dismiss at the close of the State's evidence. *Id.* at 592, 481 S.E.2d at 644. Only defendant's motion to dismiss at the close of all the evidence is before this Court. *Id.*

### B. Constructive Possession

The State concedes that the evidence does not show that defendant was in actual physical possession of the controlled substances; thus we review the evidence under the doctrine of constructive possession. A defendant "has possession [] of contraband material within the meaning of the law when he has both the power and intent to control its disposition or use." *State v. Weems*, 31 N.C. App. 569, 570-71, 230 S.E.2d 193, 194 (1976) (citation omitted). Constructive possession applies when a person does not have actual physical possession but still has the intent and capability to maintain control over the controlled substance. *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). "Where [contraband is] found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. McNeil*, 359 N.C. 800, 809-10, 617 S.E.2d 271, 277 (2005) (internal citations and quotations omitted). However, where possession of the place where the narcotics are found is non-exclusive, "the State must show *other incriminating circumstances* before constructive possession may be inferred." *Id.*

In the instant case, defendant lived at and owned a possessory interest in the residence where the controlled substances were found. He also shared the master bedroom where the majority of the marijuana and drug paraphernalia were found. He was in the living space adjoining the master bedroom at the residence when the search warrant was executed. There were drugs in plain view in the back bedroom. He demonstrated actual control over the premises in demanding the search warrant. Further, in the conversation defendant had with his wife at the Onslow County Sheriff's office, they questioned each other on how the police found out about the marijuana, and who was the confidential informant indicating that the contraband belonged to defendant. His wife also stated: "I'll tell them it was mine." This constituted sufficient incriminating evidence to support the submission of the issue of constructive possession to the jury. *See e.g., State v. Davis*, 325 N.C. 693, 699, 386 S.E.2d 187, 191 (1989)

(where defendant was present in mobile home where controlled substances were found, was presented with the search warrant, and whose name was on the bill of sale for the home, there were sufficient other incriminating circumstances to infer constructive possession of controlled substance); *State v. Baxter*, 285 N.C. 735, 736-38, 208 S.E.2d 696, 697-98 (1974) (finding constructive possession when the defendant was absent from the apartment when police arrived but a search of the bedroom that the defendant and his wife occupied yielded men's clothing and marijuana in a dresser drawer, with additional marijuana found in the pocket of a man's coat in the bedroom closet).

This argument is without merit.

### V. Identification of a controlled substance

[4] In his fourth argument, defendant contends that SBI Agent Irwin Allcox's visual identification of the white pill found in defendant's master bedroom as Methadose, a controlled substance, was not sufficient evidence to charge defendant with possession of a schedule II controlled substance. We disagree.

Defendant failed to object to Agent Allcox's testimony at trial and has not specifically argued that the trial court committed plain error. Under these circumstances, this Court will not review whether the alleged error rises to the level of plain error. *State v. Evan*, 125 N.C. App. 301, 304, 480 S.E.2d 435, 437 (1997), *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997).

This argument is dismissed.

[5] Defendant does not argue his remaining assignment of error, and it is deemed abandoned. N.C.R. App. P. 28(b)(6).

NO ERROR.

Judges STEPHENS and HUNTER, JR., ROBERT N. concur.